IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORRIS LEE,

    Plaintiff,

vs.

E. ALAMEIDA, et al.,

    Defendants.

CV F 02 5037 LJO AWI WMW PC

ORDER GRANTING LEAVE TO FILE AN AMENDED COMPLAINT

(THIRTY DAY DEADLINE)

    Plaintiff is a state prisoner proceeding prose in a civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

    This action proceeds on the complaint. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation at Mule Creek State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at the Substance Abuse Treatment Facility at Corcoran. Plaintiff names the following individual defendants: CDC Director E. Alameida, Warden Derral Adams; Chief Deputy Warden Marsh; Captain Mark Johnson; Liutenant Abbati-Harlow; Sergeant T. Akins; Sergenat Kellams; Correctional Officer E. Hough; C/O M. Garcia; C/O M. White; C/O M. Thissen; C/O Huff. The allegations of the complaint follow.

1      In July of 2000, Plaintiff was the Men's Advisory Committee/Inmate Affairs Committee
2 (MAC/IAC) chair person.  Plaintiff alleges that "on multiple instances" prior to July of 2000, he
3 was subjected to retaliatory threats from Defendant Johnson and his subordinates.
4      On July 5, 2000, Plaintiff was assaulted in his cell by two inmates.  C/O Ramirez saw the
5 altercation and activated his personal alarm.  Responding staff separated Plaintiff from the
6 attacking inmates.  Plaintiff was charged with mutual combat, though the charges were ultimately
7 dismissed.
8      On July 7, 2000, Plaintiff had a scheduled visit.  During Plaintiff's visit, personal
9 property was stolen from Plaintiff's cell.   Plaintiff eventually discovered that his cellmate had
10 stolen his property.  His cellmate advised Plaintiff that he was pressured to do so by other
11 inmates.
12     Plaintiff approached Defendant Thissen, the floor officer assigned to Plaintiff's housing
13 unit.  Thissen told Plaintiff that he would search the inmates who had pressured Plaintiff's
14 cellmate. Thissen advised Plaintiff that he would report back to him.  Plaintiff's cellmate was
15 allowed to speak with the inmates that pressured him.  Plaintiff's cellmate reported back to
16 Plaintiff and Defendant Thissen, advising them that the property would be returned the next
17 morning.  Defendant Thissen noted the information in the log.
18     The next morning, approximately half of Plaintiff's stolen property was returned to him.
19 Plaintiff approached the inmates responsible for taking his property.  Those inmates threatened
20 Plaintiff in the presence of Doe number 7.  Specifically, Inmate Fuller advised Plaintiff that
21 "that's all your getting and the next time I see you, I'm doing to deal with you1" (Compl; 13:5-6).
22  Plaintiff alleges that he was threatened "in light of the fact that Plaintiff had declined previous
23 pressure of the black inmates to retaliate against the two hispanic inmates responsible for
24 assaulting plaintiff on July 5, 2000."  Plaintiff immediately reported the threat to Defendant
25 Kellams.
26

1  Kellams provided Plaintiff with three options.  All of the involved inmates could be
2 placed in Administrative Segregation pending investigation of the incident.  Defendant Kellams
3 could "approach the thieves of the plaintiff and 'rouse-them-up' and alert them to the fact that
4 plaintiff did in fact 'snicth' on the perpatrators of the theft."  Kellams also advised Plaintiff that
5 Plaintiff could handle it himself.
6  Plaintiff demanded to speak to Defendant Abbatti-Harlow.  Abbatti-Harlow offered
7 Plaintiff the same three options.  Plaintiff returned to the yard and approached inmates Watkins
8 and Bonville.  Inmate Bonville previously served as MAC/IAC Chairman.  These inmates
9 advised Plaintiff to wait until July 10, 2000, in order for inmate Bonville to intercede on
10 Plaintiff's behalf with Defendant Johnson.  On July 9th, Watkins approached Plaintiff and advised
11 Plaintiff that "talks were essential to prevent the escalation of the situation at hand."  Plaintiff
12 sought access to the housing section where inmates Pates and Fuller (the inmates who allegedly
13 pressured Plaintiff's cellmate) were housed.  Plaintiff was granted permission to speak to the
14 inmates through  the secured dayroom door.
15  Inmate Taylor and inmate Watkins approached the C-section dayroom door while
16 Plaintiff was out of sight, but within earshot.  Taylor and Watkins inquired about the status of
17 Plaintiff's remaining stolen property.  Fuller advised them that "it was a lick" and "had inmate
18 Taylor not not 'snitched' Plaintiff wouldn't have received nothing back."  Fuller and Pates
19 informed Watkins and Taylor that "it was a done deal."  Plaintiff, Watkins and Taylor informed
20 Defendant Doe no. 7 "of the disposition of their diplomatic attempts to informally obtain
21 Plaintiff's property."
22  On July 10th, upon entering the dining area, Plaintiff was attacked by Pates and Fuller in
23 full view of Defendants Doe no. 8, Doe no. 9, White, Garcia and Hough.  Plaintiff was
24 "repeatedly struck about his head, chest and stomach areas" by Pates and Fuller.  Pates then
25 "reintegrated himself back into the crowds of other inmates present in the chowhall area."
26

1  Defendants White, Garcia and Hough directed the inmates to separate.  Plaintiff was unable to
2  comply, and both Plaintiff and inmate Fuller were sprayed with pepper spray.  Fuller and Plaintiff
3  were placed in mechanical restraints.  Plaintiff alleges that after he was secured, "responding
4  staff" again sprayed him with pepper spray.

5        Plaintiff and Fuller were taken to the medical clinic for decontamination.  They were
6  placed in cages separated from, but next to, each other.  After Fuller was examined, Sergeant
7  Adams released Pates from his cage.[1]  Pates was told that he was free to return to the recreational
8  yard.

9        Plaintiff alleges that after he and Fuller were separated, they were placed next to each
10 other in separate cages.  Plaintiff alleges that a short time later, "Pates was also placed into one of
11 the one-man steel cages next to plaintiff in the defendants attempt to get Plaintiff and inmate
12 Pates to openly express hostility and further substantiate that plaintiff and inmate Pates associates
13 in fact had open hostility toward each other."  Id., 17:14-19.

14       Within ten minutes after being released from the cages, the yard was ordered down due to
15 the initiation of a riot between Plaintiff's group of associates and a group of associates linked to
16 Pates and Fuller.  All of the involved inmates were separated and secured.  Plaintiff was released
17 to his cell after signing a "get along" chrono.  Approximately 20 minutes after Plaintiff returned
18 to his cell location, Defendant Johnson and other state defendants intentionally released Inmate
19 Taylor back to Plaintiff's cell location "notwithstanding their first hand knowledge of the acted
20 upon hostilities between Plaintiff's group of associates and inmate Taylor's group of associates
21 and despite the riot between the identified groups."

22       Plaintiff alleges that Defendant Johnson intended to instigate a physical confrontation
23 between Plaintiff and Taylor.  Johnson ordered that Plaintiff and Taylor be confined to quarters

---

[1] Plaintiff alleges that after attacking Plaintiff, Pates disappeared into the crowd, and Fuller was restrained and taken to medical.  Plaintiff then alleges that Pates was released from his cage in the medical clinic.

4

together. Three days later, Plaintiff and Taylor were placed on administrative segregation status. The cell was stripped of property, linens and other items pending their placement in AdSeg. Plaintiff and Taylor were deprived of bedding and a change of clothes for four days. On July 17th, their property was returned to them. On July 18th, Defendants Johnson and Abbatti-Harlow ordered that Plaintiff and Taylor be returned to AdSeg. Their property was again taken.

On July 22nd, Plaintiff received a visit from his wife. Plaintiff told his wife to write to Defendants Duncan and Doe no. 10. Plaintiff alleges that this "placed Defendants Duncan and Doe No. 10 on notice of all events leading up to plaintiff's assaults, ad-seg placement and other civil rights violations occurring at the CSATF Facility."

On July 25th, Plaintiff was removed from his assigned cell and interviewed regarding the concerns noted in the letter from Plaintiff's wife. Plaintiff requested that his cellmate, inmate Taylor, "be pulled out and consulted by these officials with plaintiff in which to afford these officials a clear assessment of the preceding occurrences." Taylor was pulled out of the cell, and "advised these officials of the full accounts of the preceding events leading up to his and plaintiff's ad-seg placement." Specifically, Taylor provided officials with a note from inmate Pates directed to inmate Taylor "of which placed the State Defendants on notice of Pate's dilatory anticipations of making known to be false 'staff misconduct allegations' of the misuse of force by State Defendants in relationship to the July 10, 2000, riot incident as well as plaintiff's incident which also occurred on July 10, 2000."

On August 23, 2000, Plaintiff appeared at a disciplinary hearing regarding the July 10, 2000, incident. Plaintiff was found guilty. Plaintiff alleges that defendants concealed and covered up facts indicating Plaintiff's innocence. On September 12, 2000, Plaintiff filed an appeal of his guilty finding. The appeal was received on September 14, 2000, and assigned log number SATF-C-00-03550. On September 28, 2000, the appeal was denied at the second level of review by Defendant R. Marsh. Plaintiff alleges that Marsh "diverted and manipulated said

context to solely encompass plaintiff's contention relating to inmate Pates and MTA Martinez rather than addressing the entire scope of Plaintiff's appeal in this aspect." Plaintiff contends that this was done so in order to conceal the CDC's culpability in Plaintiff's assault. Plaintiff's appeal was denied at the third and final level of review on August 8, 2001.

Plaintiff alleges generally that he "voiced his concerns to several of the State Defendants relating to the potential for violence against his person should the defendants fail in acting to intervene." Plaintiff alleges that "the defendants knew of the situation and indirectly alerting said inmates to plaintiff's informative status relating to this incident."

Plaintiff alleged that "the State Defendants created false, misleading and known to be inaccurate and false reports relating to their consults with plaintiff and observations of plaintiff prior to, contemporaneous with and subsequent to the attack upon plaintiff."

Plaintiff sets forth claims of an Equal Protection violation, deliberate indifference to his safety, unconstitutional policies, and conspiracy.

Eighth Amendment

As to Defendant Johnson and Defendant Kellams, the court has found that Plaintiff states a claim for relief.

As to the remaining defendants, the statute under which this action proceeds plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Prison officials have a duty to take reasonable steps to protect inmates from physical

1  abuse. Hoptowit v. Ray, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994). To
2  establish a violation of this duty, the prisoner must establish that prison officials were
3  "deliberately indifferent to a serious threat to the inmates's safety." Farmer v. Brennan, 511 U.S.
4  at 834. The deliberate indifference standard involves an objective and a subjective prong. First,
5  the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan,
6  511 U.S. at 834(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official
7  must "know of and disregard an excessive risk to inmate health or safety." Id. at 837.

8       To demonstrate that a prison official was deliberately indifferent to a serious threat to an
9  inmate's safety, the prisoner must show that "the official knew of and disregarded an excessive
10 risk to inmate ... safety; the official must both be aware of facts from which the inference could
11 be drawn that a substantial risk of serious harm exists, and the official must draw the inference."
12 Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

13       As to the remaining defendant, Plaintiff has failed to allege specific facts indicating that
14 they knew of and disregarded a serious threat to Plaintiff's safety. Throughout the complaint,
15 Plaintiff refers to defendants and correctional staff in general, but fails to allege specific facts
16 indicating that any of the remaining defendants knew of a specific threat to Plaintiff and
17 disregarded that threat.

18       As to the supervisory defendants, liability may be imposed on supervisory defendants
19 under § 1983 only if (1) the supervisor personally participated in the deprivation of constitutional
20 rights or (2) the supervisor knew of the violations and failed to act to prevent them. Hansen v.
21 Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. Lst, 880 F.2d 1040, 1045 (9th Cir. 1989).
22 Plaintiff does not allege facts indicating that the supervisory defendants participated in, or knew
23 of and failed to prevent, the alleged wrongs.

24       <u>Failure to Train</u>

25       In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), the Supreme Court held that,

26

under certain circumstances, a municipality may be held liable based on the failure to train its employees. This court finds no authority for the extension of <u>City of Canton</u> and its progeny to a state prison official being sued in his personal capacity. It appears to this court, following a review of the relevant case law, that the cases involving failure to train are limited to suits against city and county entities. This is not to say that plaintiff cannot allege facts involving the failure to train that are sufficient to state a claim under a theory of supervisory liability. For instance, it is possible that the failure to train employees in a particular respect may amount to a policy or practice of failing to provide employees with adequate training, and that the policy or practice of failing to provide adequate training amounts to deliberate indifference.

<u>Retaliation</u>

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his first amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005). <u>See</u> also <u>Sorrano's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989)(explaining that a plaintiff must plead facts which suggest "that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision") (citation ommitted).

Here, Plaintiff's allegations are conclusory. The facts alleged do not indicate that any particular adverse action was motivated by Plaintiff's protected conduct. As noted above, Plaintiff has alleged that the was injured because defendants Johnson and Kellams was deliberately indifferent to his safety. Plaintiff has not, however, alleged facts indicating that they were motivated by any protected conduct.

The complaint states a claim for relief against defendants Johnson and Kellams for deliberate indifference. Should Plaintiff desire to proceed on those claims, the court will sent to

Plaintiff the forms for service of process and direct service upon those defendants.

As to the remaining claims, the court finds the allegations in plaintiff's complaint vague and conclusory. The court has determined that the complaint does not contain a short and plain statement as required by Fed. R. Civ. P. 8(a)(2). Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim. Id. Because plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 8(a)(2), the complaint must be dismissed as to the remaining claims and defendants. The court will, however, grant leave to file an amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If Plaintiff chooses not to file an amended complaint, the court will send to Plaintiff the forms for service of process, and direct service of process by the U.S. Marshal immediately upon return of the forms to the court.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff is granted thirty days from the date of service of this order to file a first amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."

IT IS SO ORDERED.

**Dated:   June 10, 2008**              /s/  William M. Wunderlich
                                        UNITED STATES MAGISTRATE JUDGE