IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORRIS LEE,

        Plaintiff,                          1:02 CV 5037 LJO AWI WMW PC

        vs.                             ORDER FINDING SERVIC OF
                                       AMENDED COMPLAINT AND
                                       FORWARDING SERVICE DOCUMENTS
                                       TO PLAINTIFF

                                       (THIRTY DAY DEADLINE)

E. ALAMEIDA, et al.,

        Defendants.

        Plaintiff is a state prisoner proceeding prose in a civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C. § 636(b)(1).

        This action proceeds on the August 26, 2008, first amended complaint.  The first amended complaint is filed in response to an earlier order dismissing the original complaint with leave to amend.  Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation at Mule Creek State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at the Substance Abuse Treatment Facility at Corcoran.  Plaintiff names the following individual defendants: CDC Director E. Alameida, Warden Derral Adams; Chief Deputy Warden Marsh; William A. Duncan, R. March;  Captain Mark Johnson; Lieutenant Abbati-Harlow; Sergeant T. Akins; Sergeant Kellams; Correctional

Officer E. Hough; C/O M. Garcia; C/O M. White; C/O M. Thissen; Mouse; L. Melching; Lewis N. Jones; E. Espinosa; Jerry Negrete; K. Holland; Tony Loftin.  In the order dismissing the original complaint, the court noted the following allegations.

In July of 2000, Plaintiff was the Men's Advisory Committee/Inmate Affairs Committee (MAC/IAC) chair person.  Plaintiff alleges that "on multiple instances" prior to July of 2000, he was subjected to retaliatory threats from Defendant Johnson and his subordinates.

On July 5, 2000, Plaintiff was assaulted in his cell by two inmates.  C/O Ramirez saw the altercation and activated his personal alarm.  Responding staff separated Plaintiff from the attacking inmates.  Plaintiff was charged with mutual combat, though the charges were ultimately dismissed.

On July 7, 2000, Plaintiff had a scheduled visit.  During Plaintiff's visit, personal property was stolen from Plaintiff's cell.   Plaintiff eventually discovered that his cellmate had stolen his property.  His cellmate advised Plaintiff that he was pressured to do so by other inmates.

Plaintiff approached Defendant Thissen, the floor officer assigned to Plaintiff's housing unit.  Thissen told Plaintiff that he would search the inmates who had pressured Plaintiff's cellmate.  Thissen advised Plaintiff that he would report back to him.  Plaintiff's cellmate was allowed to speak with the inmates that pressured him.  Plaintiff's cellmate reported back to Plaintiff and Defendant Thissen, advising them that the property would be returned the next morning.  Defendant Thissen noted the information in the log.

The next morning, approximately half of Plaintiff's stolen property was returned to him.  Plaintiff approached the inmates responsible for taking his property.  Those inmates threatened Plaintiff in the presence of Doe number 7.  Specifically, Inmate Fuller advised Plaintiff that "that's all your getting and the next time I see you, I'm doing to deal with you1" (Compl; 13:5-6).  Plaintiff alleges that he was threatened "in light of the fact that Plaintiff had declined previous

pressure of the black inmates to retaliate against the two hispanic inmates responsible for assaulting plaintiff on July 5, 2000." Plaintiff immediately reported the threat to Defendant Kellams.

Kellams provided Plaintiff with three options. All of the involved inmates could be placed in Administrative Segregation pending investigation of the incident. Defendant Kellams could "approach the thieves of the plaintiff and 'rouse-them-up' and alert them to the fact that plaintiff did in fact 'snitch' on the perpetrators of the theft." Kellams also advised Plaintiff that Plaintiff could handle it himself.

Plaintiff demanded to speak to Defendant Abbatti-Harlow. Abbatti-Harlow offered Plaintiff the same three options. Plaintiff returned to the yard and approached inmates Watkins and Bonville. Inmate Bonville previously served as MAC/IAC Chairman. These inmates advised Plaintiff to wait until July 10, 2000, in order for inmate Bonville to intercede on Plaintiff's behalf with Defendant Johnson. On July 9th, Watkins approached Plaintiff and advised Plaintiff that "talks were essential to prevent the escalation of the situation at hand." Plaintiff sought access to the housing section where inmates Pates and Fuller (the inmates who allegedly pressured Plaintiff's cellmate) were housed. Plaintiff was granted permission to speak to the inmates through the secured dayroom door.

Inmate Taylor and inmate Watkins approached the C-section dayroom door while Plaintiff was out of sight, but within earshot. Taylor and Watkins inquired about the status of Plaintiff's remaining stolen property. Fuller advised them that "it was a lick" and "had inmate Taylor not not 'snitched' Plaintiff wouldn't have received nothing back." Fuller and Pates informed Watkins and Taylor that "it was a done deal." Plaintiff, Watkins and Taylor informed Defendant Doe no. 7 "of the disposition of their diplomatic attempts to informally obtain Plaintiff's property."

On July 10th, upon entering the dining area, Plaintiff was attacked by Pates and Fuller in

3

1   full view of Defendants Doe no. 8, Doe no. 9, White, Garcia and Hough.  Plaintiff was

2   "repeatedly struck about his head, chest and stomach areas" by Pates and Fuller.  Pates then

3   "reintegrated himself back into the crowds of other inmates present in the chowhall area."

4   Defendants White, Garcia and Hough directed the inmates to separate.  Plaintiff was unable to

5   comply, and both Plaintiff and inmate Fuller were sprayed with pepper spray.  Fuller and Plaintiff

6   were placed in mechanical restraints.  Plaintiff alleges that after he was secured, "responding

7   staff" again sprayed him with pepper spray.

8          Plaintiff and Fuller were taken to the medical clinic for decontamination.  They were

9   placed in cages separated from, but next to, each other.  After Fuller was examined, Sergeant

10  Adams released Pates from his cage.[1]  Pates was told that he was free to return to the recreational

11  yard.

12         Plaintiff alleges that after he and Fuller were separated, they were placed next to each

13  other in separate cages.  Plaintiff alleges that a short time later, "Pates was also placed into one of

14  the one-man steel cages next to plaintiff in the defendants attempt to get Plaintiff and inmate

15  Pates to openly express hostility and further substantiate that plaintiff and inmate Pates associates

16  in fact had open hostility toward each other."  Id., 17:14-19.

17         Within ten minutes after being released from the cages, the yard was ordered down due to

18  the initiation of a riot between Plaintiff's group of associates and a group of associates linked to

19  Pates and Fuller.  All of the involved inmates were separated and secured.  Plaintiff was released

20  to his cell after signing a "get along" chrono.  Approximately 20 minutes after Plaintiff returned

21  to his cell location, Defendant Johnson and other state defendants intentionally released Inmate

22  Taylor back to Plaintiff's cell location "notwithstanding their first hand knowledge of the acted

23  upon hostilities between Plaintiff's group of associates and inmate Taylor's group of associates

24

25       [1]  Plaintiff alleges that after attacking Plaintiff, Pates disappeared into the crowd, and Fuller
was restrained and taken to medical.  Plaintiff then alleges that Pates was released from his cage in

26  the medical clinic.

1    and despite the riot between the identified groups."

2          Plaintiff alleges that Defendant Johnson intended to instigate a physical confrontation

3    between Plaintiff and Taylor.  Johnson ordered that Plaintiff and Taylor be confined to quarters

4    together.  Three days later, Plaintiff and Taylor were placed on administrative segregation status.

5    The cell was stripped of property, linens and other items pending their placement in AdSeg.

6    Plaintiff and Taylor were deprived of bedding and a change of clothes for four days.   On July

7    17th, their property was returned to them.  On July 18th, Defendants Johnson and Abbatti-Harlow

8    ordered that Plaintiff and Taylor be returned to AdSeg.  Their property was again taken.

9          On July 22nd, Plaintiff received a visit from his wife.  Plaintiff told his wife to write to

10   Defendants Duncan and Doe no. 10.  Plaintiff alleges that this "placed Defendants Duncan and

11   Doe No. 10 on notice of all events leading up to plaintiff's assaults, ad-seg placement and other

12   civil rights violations occurring at the CSATF Facility."

13         On July 25th, Plaintiff was removed from his assigned cell and interviewed regarding the

14   concerns noted in the letter from Plaintiff's wife.  Plaintiff requested that his cellmate, inmate

15   Taylor, "be pulled out and consulted by these officials with plaintiff in which to afford these

16   officials a clear assessment of the preceding occurrences."  Taylor was pulled out of the cell, and

17   "advised these officials of the full accounts of the preceding events leading up to his and

18   plaintiff's ad-seg placement."  Specifically, Taylor provided officials with a note from inmate

19   Pates directed to inmate Taylor "of which placed the State Defendants on notice of Pates's

20   dilatory anticipations of making known to be false 'staff misconduct allegations' of the misuse of

21   force by State Defendants in relationship to the July 10, 2000, riot incident as well as plaintiff's

22   incident which also occurred on July 10, 2000."

23         On August 23, 2000, Plaintiff appeared at a disciplinary hearing regarding the July 10,

24   2000, incident.  Plaintiff was found guilty.  Plaintiff alleges that defendants concealed and

25   covered up facts indicating Plaintiff's innocence.   On September 12, 2000, Plaintiff filed an

26

1   appeal of his guilty finding.  The appeal was received on September 14, 2000, and assigned log

2   number SATF-C-00-03550.   On September 28, 2000, the appeal was denied at the second level

3   of review by Defendant R. Marsh.   Plaintiff alleges that Marsh "diverted and manipulated said

4   context to solely encompass plaintiff's contention relating to inmate Pates and MTA Martinez

5   rather than addressing the entire scope of Plaintiff's appeal in this aspect."  Plaintiff contends that

6   this was done so in order to conceal the CDC's culpability in Plaintiff's assault.  Plaintiff's

7   appeal was denied at the third and final level of review on August 8, 2001.

8            Plaintiff alleges generally that he "voiced his concerns to several of the State Defendants

9   relating to the potential for violence against his person should the defendants fail in acting to

10   intervene."  Plaintiff alleges that "the defendants knew of the situation and indirectly alerting said

11   inmates to plaintiff's informative status relating to this incident."

12           Plaintiff alleged that "the State Defendants created false, misleading and known to be

13   inaccurate and false reports relating to their consults with plaintiff and observations of plaintiff

14   prior to, contemporaneous with and subsequent to the attack upon plaintiff."

15           Plaintiff sets forth claims of an Equal Protection violation, deliberate indifference to his

16   safety, unconstitutional policies, and conspiracy.

17           Eighth Amendment

18           As to Defendant Johnson and Defendant Kellams, the court has found that Plaintiff states

19   a claim for relief.

20           As to the remaining defendants, the statute under which this action proceeds plainly

21   requires that there be an actual connection or link between the actions of the defendants and the

22   deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social

23   Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held

24   that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning

25   of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to

26

6

1  perform an act which he is legally required to do that causes the deprivation of which the

2  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

3         Prison officials have a duty to take reasonable steps to protect inmates from physical

4  abuse. Hoptowit v. Ray, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To

5  establish a violation of this duty, the prisoner must establish that prison officials were

6  "deliberately indifferent to a serious threat to the inmates's safety."  Farmer v. Brennan, 511 U.S.

7  at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First,

8  the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan,

9  511 U.S. at 834(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official

10  must "know of and disregard an excessive risk to inmate health or safety."  Id. at 837.

11         To demonstrate that a prison official was deliberately  indifferent to a serious threat to an

12  inmate's safety, the prisoner must show that "the official knew of and disregarded an excessive

13  risk to inmate ... safety; the official must both be aware of facts from which the inference could

14  be drawn that a substantial risk of serious harm exists, and the official must draw the inference."

15  Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

16         As to the remaining defendant, Plaintiff has failed to allege specific facts indicating that

17  they knew of and disregarded a serious threat to Plaintiff's safety.  Throughout the complaint,

18  Plaintiff refers to defendants and correctional staff in general, but fails to allege specific facts

19  indicating that any of the remaining defendants knew of a specific threat to Plaintiff and

20  disregarged that threat.

21         As to the supervisory defendants, liability may be imposed on supervisory defendants

22  under § 1983 only if (1) the supervisor personally participated in the deprivation of constitutional

23  rights or (2) the supervisor knew of the violations and failed to act to prevent them.  Hansen v.

24  Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. Lst, 880 F.2d 1040, 1045 (9th Cir. 1989).

25  Plaintiff does not allege facts indicating that the supervisory defendants participated in, or knew

26

7

1   of and failed to prevent, the alleged wrongs.

2       Failure to Train

3       In City of Canton, Ohio v. Harris, 489 U.S. 378 (1989),  the Supreme Court held that,

4   under certain circumstances, a municipality may be held liable based on the failure to train its

5   employees.  This court finds no authority for the extension of City of Canton and its progeny to a

6   state prison official being sued in his personal capacity.  It appears to this court, following a

7   review of the relevant case law, that the cases involving failure to train are limited to suits against

8   city and county entities.  This is not to say that plaintiff cannot allege facts involving the failure

9   to train that are sufficient to state a claim under a theory of supervisory liability.  For instance, it

10  is possible that the failure to train employees in a particular respect may amount to a policy or

11  practice of failing to provide employees with adequate training, and that the policy or practice of

12  failing to provide adequate training amounts to deliberate indifference.

13      Retaliation

14      "Within the prison context, a viable claim of First Amendment retaliation entails five

15  basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2)

16  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

17  exercise of his first amendment rights, and  (5) the action did not reasonably advance a legitimate

18  correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  See also Sorrano's

19  Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)(explaining that a plaintiff must plead

20  facts which suggest "that the protected conduct was a 'substantial' or 'motivating' factor in the

21  defendant's decision") (citation ommitted).

22      Here, Plaintiff's allegations are conclusory.  The facts alleged do not indicate that any

23  particular adverse action was motivated by Plaintiff's protected conduct.  As noted above,

24  Plaintiff has alleged that the was injured because defendants Johnson and Kellams was

25  deliberately indifferent to his safety.  Plaintiff has not, however, alleged facts indicating that they

26

1   were motivated by any protected conduct.

2       Plaintiff was specifically advised that the original complaint stated a claim for relief

3   against defendants Johnson and Kellams for deliberate indifference.   As to the remaining claims,

4   the court found the allegations in plaintiff's complaint vague and conclusory.   The court

5   determined that the complaint did not state a claim for relief as to the remaining defendants.

6   Plaintiff was granted leave to file a first amended complaint to correct the identified deficiencies.

7       In the first amended complaint, Plaintiff provides further factual detail, but fails to correct

8   the deficiencies identified in the original complaint.   Plaintiff alleges that he was attacked by

9   inmates Venture and Aguilera on July 5, 2000, but fails to allege any facts constituting deliberate

10  indifference.  Plaintiff specifically alleges that "C/O Ramirez activated the building alarm and

11  responding staff were required to use force to stop this assault and remove the aggressors from

12  the cell." Am. Compl. ¶ 36.   Plaintiff alleges that the incident was orchestrated by Defendant

13  Johnson in retaliation for Plaintiff's exercise of his "rights to freedom of speech."   Plaintiff does

14  not allege any facts that satisfy the above standard for retaliation.   Specifically, there are no facts

15  alleged suggesting that Plaintiff's first amendment rights were actually chilled.   Further, there are

16  no facts suggesting that the protectec donduct was a substantial or motivating factor in

17  defendant's decisions.   That Plaintiff believes an assault was orchestrated because of his

18  participation in the men's council in insufficient.   Plaintiff must allege facts indicating that this is

19  so.  He fails to do so here.

20      Plaintiff again alleges that he discovered that inmate Taylor was responsible for the theft

21  of Plaintiff's property.   Plaintiff confronted Taylor, who admitted to taking Plaintiff's property.

22  Taylor told Plaintiff that he was pressured to do so by inmates Pates and Fuller.   Plaintiff

23  contends that Defendant Johnson "acted in collusion" with Pates and Fuller.

24      Plaintiff advised Thissen of his discovery.   Thissen searched Pates's and Fuller's cell, but

25  did not recovery any property of Plaintiff's.  Plaintiff subsequently told Thissen that Taylor

26

1   agreed to return the property.  Thissen notified the Building 3 control booth officer to release

2   Taylor "and allow him to converse with inmates Pates and Fuller in their assigned cell."  As a

3   result, Taylor reported to Plaintiff and Thissen that Pates and Fuller would return the property the

4   next day.   Thissen wrote a note to this effect to Defendants C/O Hough and C/O Moss.   Plaintiff

5   personally advised Moss and Hough.   Inmate Taylor returned to Plaintiff approximately half of

6   his property.

7          Defendant Hough then arranged to have Pates and Fuller brought to the C Section day

8   room door, having them remain on the day room side of the door.  Plaintiff was positioned on the

9   corridor side.  Hough placed himself such that he could hear the conversation.  Inmate Fuller

10  stated to Plaitniff that "that's all your getting and the next time I see you, I'm going to deal with

11  you."  Plaintiff specifically alleges that the phrase "deal with" specifically implies a threat in the

12  prison context.  Plaintiff alleges that Hough "failed to act upon the clear threat against the

13  Plaintiff and failed to secure the remaining half of Plaintiff's personal property."

14         Plaintiff contacted Defendant Kellams, advising him of the same facts, and requested that

15  he intervene "regarding the personal threats made against Plaintiff" and to retrieve Plaintiff's

16  property.  Kellams advised Plaintiff of the three options referred to in the original complaint:

17  place all inmates in administrative segregation pending investigation; "harrass the thieves",

18  thereby alerting them that Plaintiff is a snitch; Plaintiff could "handle it" himself.

19         Plaintiff demanded to see Lt. Abbati-Harlow.  Abbati-Harlow proposed a compromise.

20  Pates and Fuller would remain in the day room while inmates Watkins and Taylor would remain

21  in the corridor and converse through the day room door.  Plaintiff remained out of sigh, but

22  within earshot.  Inmate Watkins asked Plaintiff about Plaintiff's property.  Fuller replied that

23  "had inmate Taylor not 'snitched' the Plaintiff would not have received any property back and

24  that nothing futher would be returned."

25         On July 10, 2000, Plaintiff was attacked by Pates and Fuller as he entered the dining

26

room.  Pates withdrew from the altercaion, and Fuller continued, "despite Plaintiff's attempts to

disengage."  Defendants White, Hough and Garcia were present.  They ordered both inmates to

the ground and discharged pepper stpray "and the use of force" to pull Fuller of of Plaintiff.  Both

inmates were secured in mechanical restraings "whereupon Defendant Garcia, as additional staff

responded to the scene, discharged his pepper spray a second time at the Plaintiff."

Liberally construed, Plaintiff states a claim for excessive force as to Defendant Garcia.

As to the remaining defendants, the facts alleged do not indicate deliberate indifference to

Plaintiff's safety.  Plaintiff also states a claim as to Defendant Abbati-Harlow.  Liberally

construed, Abbati-Harlow knew of a danger to Plaintiff and failed to act to prevent it, resulting in

injury to Plaintiff.

Pates and Plaintiff were released from their cages back on to the yard.  Within then

minutes, a disturbance involving numerous inmates occurred.  The cause of the disturbance was

later identified as "belonging to two distinct groups; the supporting Pates and Fuller and those

supporting the Plaintiff."

Plaintiff was released from his cage.   Twenty minutes later, Defendant Johnson

intentionally released inmate Taylor from the one-man steel cage area and returned him to

Plaintiff's assigned cell.  Plaintiff alleges that Johnson did so in retaliation for Plaintiff's exercise

of his first amendment rights.   Though Plaintiff alleges that Johnson intended to preciptate a

physical altercation, Plaintiff also alleges that the attempt failed.  There are no facts alleged

indicating that Taylor assaulted Plaintiff, or otherwise caused any injury to Plaintiff.

Plaintiff alleges that Johnson placed both Plaintiff and Taylor in Administrative

Segregation.  Plaintiff alleges that Johnson's "subordinates" removed all of the property from his

cell, leaving Plaintiff and Taylor with the clothing they were wearing and a mattress.   Plaintiff

alleges that Johnson did this "in an effort to continue the pressure to bait them into continued

physical violence."

On July 21, 2000, at the mandatory 72 hour review of Administrative Segregation placement, A. Quinones elected to retain Plaintiff in Administrative Segregation pending investigation.  Plaintiff alleges, without factual support, that Quinones' decision was based upon a desire to hamper Plaintiff in his ability to defend himself against any disciplinary action.

On August 23, 2000, Plaintiff appeared at a disciplinary hearing, and was found guilty of mutual combat.  Plaintiff filed an appeal of the guilty finding.  Plaintiff's appeal was eventually denied at the Director's Level of review.

As noted in the order dismissing the original complaint, Plaintiff has failed to allege facts that satisfy a conspiracy claim.  Plaintiff has stated a claim for relief against Defendant Garcia for excessive force, and Abbati-Harlow for deliberate indifference.  Plaintiff fails to correct the identified deficiencies as to the remaining defendants.

Accordingly, IT IS HEREBY ORDERED that:

1.      Service is appropriate for the following defendants:

        M. GARCIA

        J. ABBATI-HARLOW

2.      The Clerk of the Court shall send Plaintiff two USM-285 forms, two summonses, a Notice of Submission of Documents form, an instruction sheet and a copy of the first amended complaint filed August 26, 2008.

3.      Within **thirty (30) days** from the date of this order, Plaintiff shall complete the attached Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

        a.      Completed summons;

        b.      One completed USM-285 form for each defendant listed above; and

        c.      Two copies of the endorsed first amended complaint filed August 26,

2008.

4.      Plaintiff need not attempt service on Defendants and need not request waiver of

service.  Upon receipt of the above-described documents, the Court will direct the

United States Marshal to serve the above-named defendants pursuant to Federal

Rule of Civil Procedure 4 without payment of costs.

5.      The failure to comply with this order will result in a recommendation that this

action be dismissed.

**Dated: June 1, 2009**                                    **/s/ William M. Wunderlich**
                                                     UNITED STATES MAGISTRATE JUDGE

13